UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANJAY TYAGI and ALKA JAGATIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 16 C 11236 |
| v. | ) | |
| | ) | |
| ERAINA ROSS BURLESON and | ) | Judge Thomas M. Durkin |
| MARISOL RUBIO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Sanjay Tyagi and Alka Jagatia ("plaintiffs") originally sued a wide range of defendants for a variety of constitutional violations in connection with (a) plaintiffs' disagreement with their son A.T.'s doctors regarding the appropriate treatment for A.T.'s seizures and (b) a related Department of Child and Family Services ("DCFS") investigation. *See* R. 1. Last year, this Court granted in part and denied in part several motions to dismiss, holding that plaintiffs had stated Fourth and Fourteenth Amendment claims against DCFS social workers Eraina Ross-Burleson and Marisol Rubio ("defendants"). R. 200. Since that ruling, plaintiffs have failed to meaningfully engage with the merits of their surviving claims. Instead, they have made scores of frivolous filings, disobeyed Court orders, and lodged a series of accusations against the Court. Currently before the Court is defendants' motion for sanctions in the form of dismissal pursuant to Federal Rules of Civil Procedure 37 and 11. R. 392. For the reasons explained below, the Court grants defendants' motion and dismisses plaintiffs' case with prejudice.

**Background**

The Court begins with plaintiffs' recent discovery-related conduct, and then turns to a broader summary of plaintiffs' conduct throughout this case. On June 29, 2018, defendants filed a motion to compel discovery from plaintiffs before Magistrate Judge Kim, to whom this Court referred discovery supervision in this case. R. 207, 290. Defendants sought production of plaintiffs' initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), responses to interrogatories and requests to produce, and cooperation in scheduling depositions. R. 290. Despite being granted an extension of time and a reminder from Judge Kim, plaintiffs failed to respond to defendants' motion to compel. R. 291, 320.

On July 31, 2018, Judge Kim granted in part and denied in part defendants' motion to compel. R. 357. Judge Kim ordered plaintiffs: (1) to "either describe the documents" they are required to disclose under Rule 26(a)(1) "in more detail or provide a copy of the documents to Defendants by August 21, 2018"; (2) to "answer Interrogatory Nos. 1-6, 8, and 10, 11, 13-16 to the best of their ability and recollection by August 21, 2018"; and (3) "to produce documents they now have in their possession and control in response to [request for production] Nos. 1, 2, 4-12, and 14-16 by August 21, 2018." R. 357. Judge Kim reminded plaintiffs of the August 21, 2018 deadline on August 20, 2018, explaining that "Defendants may file a motion for sanctions if Plaintiffs fail to comply with the court's order in a timely manner." R. 369.

Despite these admonitions, plaintiffs failed to comply with Judge Kim's order by the August 21, 2018 deadline (and still have failed to do so). Plaintiffs have not: (1) produced any Rule 26(a)(1) documents or identified them in greater detail; (2) answered the interrogatories they were ordered to answer; or (3) produced responses to the requests for production to which they were ordered to respond. Although plaintiffs propounded on defendants through email 284 files containing various medical journals and other documents, plaintiffs did not identify which, if any, Rule 26(a)(1) disclosures or requests for production these files correspond with. *See* R. 341. Furthermore, plaintiffs failed to attend their depositions on the September 25 and 26, 2018 dates set by Judge Kim (R. 363), instead emailing to say they would be out of the country on the scheduled dates (R. 401-6).

Plaintiffs' refusal to comply with court-ordered discovery has occurred against a backdrop of plaintiffs' consistent failure to engage with the merits of this case. Since the case began, plaintiffs have filed over 100 unprompted objections, motions, requests, exhibit lists, and declarations (R. 36, 75, 78, 95, 99, 103, 105, 130, 137, 139, 141, 144, 155, 156, 157, 158, 159, 160, 164, 166, 167, 169, 171, 172, 173, 174, 176, 177, 179, 180, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 202, 205, 208, 210, 218, 219, 229, 230, 235, 236, 243, 247, 249, 254, 261, 271, 272, 278, 281, 285, 288, 293, 295, 297, 302, 304, 306, 307, 309, 313, 315, 318, 322, 324, 326, 328, 332, 334, 336, 338, 339, 344, 348, 349, 350, 352, 358, 359, 365, 366, 367, 371, 372, 374, 376, 378, 379, 380, 382, 384, 387, 394), the vast majority of which were procedurally improper or frivolous. This Court has issued at

least 13 written rulings (R. 147, 200, 206, 212, 223, 238, 248, 273, 274, 300, 301, 323, 340) and many additional oral rulings addressing these filings. Plaintiffs also have filed two appeals with the Seventh Circuit. R. 211, 348. One was dismissed for lack of jurisdiction as premature. R. 227. The other was a petition for writ of mandamus that the Seventh Circuit summarily denied. R. 356.

In numerous written rulings, the Court has explained to plaintiffs that they have several claims that survived a motion to dismiss—*i.e.*, their Fourth and Fourteenth Amendment claims arising from defendants' alleged searches of plaintiffs' children at their home and threats of removal (R. 200 at 34-36)—and that plaintiffs should focus their efforts on pursuing discovery on those claims or risk dismissal of their case. *See* R. 206 at 7 (explaining in the course of denying plaintiffs' motion for findings of fact and conclusions of law supporting the Court's 51-page motion to dismiss ruling: "plaintiffs should understand that the Court has found that they have several valid claims to pursue. Instead of pursuing continual efforts to expand the scope of their complaint, plaintiffs' efforts at this stage are likely best spent on discovery with respect to their surviving claims."); R. 248 at 5 (explaining in the course of denying plaintiffs' motion for certification of interlocutory appeal that plaintiffs' "time is better spent pursuing discovery on their remaining claims than filing motions and appeals that further delay this already prolonged litigation. The Court reminds plaintiffs that failure to pursue their case on the merits, including complying with the discovery schedule set by Magistrate Judge Kim, may result in dismissal for failure to prosecute."); R. 274 at 1

(explaining in the course of denying one of plaintiffs' numerous motions for judicial disclosure: "The Court reminds plaintiffs that they still have a federal lawsuit against two remaining defendants, and that their time is best spent pursuing discovery on the merits of their lawsuit, including by meeting discovery deadlines set by Magistrate Judge Kim."); R. 340 at 1 (explaining in the course of dismissing plaintiffs' appeal from two of Judge Kim's orders that contained no substantive argument: "The Court notes that plaintiffs have filed more than 20 procedurally improper and often redundant motions and declarations with this Court in the past month—often several in a single day. Plaintiffs are abusing the motion practice process, which does nothing but distract attention from the procedurally proper motions in this case and in the many other cases on the Court's docket. The Court further notes for the record that, mindful of plaintiffs' status as pro se litigants, the Court has given plaintiffs more leeway and exercised more patience than it has with any other litigants in five-and-a-half years on the bench. Plaintiffs are warned that continued filing of procedurally improper, frivolous, or duplicative motions in quick succession will result in firmer action, up to and including dismissal of plaintiffs' case."); *see also* R. 386 (Judge Kim's order reminding plaintiffs of this Court's admonition that "continued filing of procedurally improper, frivolous, or duplicative motions in quick succession will result in firmer action, up to and including dismissal of plaintiffs' case").

Plaintiffs remained undeterred by these warnings. They continued to fill the docket with filings, and they failed to comply with Judge Kim's discovery rulings

5

despite numerous chances to do so. This course of conduct ultimately prompted defendants' motion for sanctions under Rules 37 and 11 in the form of dismissal of this case with prejudice. R. 392. This Court allowed plaintiffs an opportunity to respond, and they filed their response on October 15, 2018. R. 400. Defendants filed a reply on October 31, 2018. R. 401.

## Standard

Federal Rule of Civil Procedure 37(b)(2)(A) provides that where a party "fails to obey an order to provide or permit discovery," the Court may order sanctions up to and including "dismissing the action or proceeding." A dismissal sanction "requires a finding of willfulness, bad faith or fault on the part of the defaulting party." *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 190 (7th Cir. 2011). "In civil cases, the facts underlying a district court's decision to dismiss the suit or enter a default judgment as a sanction under Rule 37 or the court's inherent authority need only be established by a preponderance of the evidence." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016), *cert. denied*, 138 S. Ct. 116 (2017). Trial judges "have considerable latitude to make the sanctions serve their function as both specific and general deterrents." *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*, 667 F.2d 600, 605 (7th Cir. 1981).

Federal Rule of Civil Procedure 11 similarly authorizes sanctions for failure to comply with its requirements that filings not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." "One of the basic purposes of Rule 11 is to deter baseless filings in the

6

district court," and sanctions under Rule 11 are reviewed "with deference because the trial court alone has intimate familiarity with the relevant proceedings." *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 656 (7th Cir. 2003).

## Discussion

First addressing Rule 37, the Court finds sanctions warranted for plaintiffs' "fail[ure] to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). As set forth above, plaintiffs have failed to comply with any of the requirements set forth in Judge Kim's order on defendants' motion to compel (R. 357), and they have done so despite a reminder by Judge Kim that they could face sanctions for failure to comply (R. 369). This constitutes a clear and obvious grounds for sanctions under Rule 37.

Instead of complying with Judge Kim's discovery order, in the weeks following that order, plaintiffs filed: (1) a motion requesting financial disclosure forms from this Court and Judge Kim (R. 371); (2) a motion requesting this Court "to verify money and campaign contributions" received by a family member to determine if the Court's "decisions will cause damage to integrity of judiciary in the eyes of the public" (R. 372); (3) a motion asking the Court to "find and certify" a substantial difference of opinion among the courts of appeals on expectations of privacy in public schools (R. 376); (4) a motion for the Court to "declare that procedure of appointing Illinois DCFS Administrative Law Judges violates Constitution" (R. 380); (5) a motion for the Court "to declare that parents and their children have constitutional right of medical self-defense to decline dangerous drugs

7

and dangerous procedures to prevent injury" (R. 382); and (6) a motion for the Court "to find and certify that there is a substantial difference of Opinion . . . on the Question Can a seizure without court order and court warrant last longer than necessary" (R. 384).

These filings, along with the vast majority of the more than 100 unprompted filings by plaintiffs throughout this litigation, are in violation of Rule 11. The sheer number of these filings alone shows that they were brought for "an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See* Fed. R. Civ. P. 11(b)(1). And the baseless claims and insults to the Court[1] and opposing parties and their counsel[2] contained in these filings confirms their harassing intent. The Court therefore finds sanctions warranted under Rule

---

[1] *See, e.g.*, R. 394 at 1 ("Judge Durkin has rigged this case, played the game and has unleashed 'Weapons of Judicial and Legal Corruption' against plaintiffs."); R. 332 at 2 ("Judge Thomas Durkin is suffering from 'black robe syndrome.' He has forgotten his humility and roots. . . . Honorable Judge Thomas Durkin is intellectually lazy. . . . Honorable Judge Thomas Durkin does not have the courage to make a difficult decision."); R. 328 at 2 ("Although the plaintiffs have no proof, the plaintiffs highly suspect that honorable Judge Thomas Durkin has been bribed or corrupted directly or indirectly and fixed the final outcome of this case."); R. 285 at 1-2 (accusing the Court of "memory loss, apathy, judicial dementia and mental incompetence"); R. 230 at 1 (moving for recusal and accusing Court of considering plaintiffs "trash" and being "strongly biased against them"); R. 208 at 2 (moving for recusal based on alleged "deep-seated hostility" of Court to "this particular type of case").

[2] *See, e.g.*, R. 334 at 1 (accusing defendants' counsel of "hold[ing] a powerful position and mak[ing] false and libelous statements in court for the likely purpose of chilling, threatening, intimidating and framing plaintiffs in some kind of future criminal prosecution"); R. 313 at 1 (accusing DCFC of "corruption, malfeasance, fraud, false testimony in courts, falsification of case notes, mismanagement, violation of rules, procedures, laws or ethics"); R. 302 at 1 (accusing defendants of "conspir[ing] to railroad plaintiffs, caus[ing] obstruction of justice and violat[ing] constitutional rights of plaintiffs").

11 as well. *See* Fed. R. Civ. P. 11(c)(1) (allowing sanctions for Rule 11 violations on Court's own initiative after giving offending party "notice and a reasonable opportunity to respond," which this Court provided to plaintiffs).

The Court further finds that plaintiffs' violations of Rules 37 and 11 have been "willful[ ]" and in "bad faith." *See Brown*, 664 F.3d at 190. Indeed, plaintiffs have demonstrated willful bad faith throughout this litigation. They have defied this Court's repeated warnings to stop filing procedurally improper or frivolous motions (R. 206, 248, 274, 340, 386); they have defied Magistrate Judge Kim's discovery order (R. 357); they have defied this Court's orders to file motions before Judge Kim and instead continued to file them in front of this Court (R. 351, 380, 382, 384); and they have defied Judge Kim's orders to properly notice motions for presentment (R. 335, 351, 355, 371, 372, 373).

In plaintiffs' response to defendants' motion for sanctions, plaintiffs do not substantively address the arguments in defendants' motion. Instead, they respond with inflammatory rhetoric of the sort that is typical of their filings in this case. They begin by calling this Court the "Durkin Corruption Family Syndicate" (a variation on the acronym "DCFS"). R. 400 at 1. They accuse the Court of "violat[ing] US constitution" and "giv[ing] a helping hand to state organized trafficking, kidnapping, and exploitation of American children," and they accuse Judge Kim of making "illegal orders." *Id.* at 1-3. They take issue with the Administrative Office's failure to release this Court's financial disclosure reports (*id.* at 2), a process over

9

which the Court has no control.[3] They take issue with monetary donations received by a member of the Court's family (Jim Durkin, a member of the Illinois House of Representatives). *Id.* And they accuse defendants of "outright lies," "terroriz[ing] the plaintiffs," and "cry[ing]" because plaintiffs asserted their rights. *Id.* at 2-3.[4] Finally, plaintiffs express their intent to seek justice "in all available forums," including a "Petition to Impeach [this Court] in US Congress, Petition of Justice before Honorable President Donald Trump, [and] Petition to United Nations and International Courts." *Id.* at 3. None of these are substantive responses that in any way explain plaintiffs' conduct or change this Court's finding of willfulness and bad faith.

The Court has given plaintiffs great leniency throughout this case, mindful of their status as pro se litigants. The Court has made numerous accommodations of plaintiffs, including allowing plaintiffs to appear by phone (R. 77) and granting extensions of time (*e.g.*, R. 241, 320). And the Court has been patient with plaintiffs' plethora of filings in this case and their repeated attempts to make this a more wide-ranging case than the law allows (including challenging the DCFS system as a whole). But instead of taking advantage of that leniency and pursing the merits of their case on the valid claims they have, plaintiffs have obstructed the progression

---

[3] The Court received notice that the Court's financial reports were provided to plaintiffs by the Administrative Office on October 19, 2018.

[4] Plaintiffs also accuse defendants of failing to provide any discovery themselves. But plaintiffs have acknowledged receipt of a disc containing approximately 5,000 pages of discovery from defendants. R. 401-2. And defendants have served written responses to plaintiffs' interrogatories, requests for production, and requests to admit. R. 401-3, 401-4, 401-5.

10

of the case at every turn. As the Seventh Circuit has "repeatedly held, even pro se litigants must follow procedural rules." *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) (upholding dismissal of case for violations of Rule 37 and finding no demonstrable judicial bias). The Court has repeatedly warned plaintiffs (R. 206, 248, 274, 340, 386), and plaintiffs have continually defied those warnings. Moreover, plaintiffs' filings indicate that they are well-educated and intelligent. Their disregard of Court orders has been no accident.

Based on this Court's findings of willfulness and bad faith and the exceptional circumstances at issue, the Court finds a dismissal sanction appropriate. *See, e.g.*, *Williams v. Wahner*, 714 F. App'x 601, 602 (7th Cir. 2018) (affirming dismissal of pro se litigant's suit under Rule 37(b)(2)(A) for failure to comply with multiple discovery orders); *Muhammad v. City of Chicago*, 637 F. App'x 232 (7th Cir. 2016) (same); *Watkins v. Nielsen*, 405 F. App'x 42, 46 (7th Cir. 2010) (same); *Charter House*, 667 F.2d at 606 (district court did not abuse its discretion in dismissing case as a sanction under Rule 37, including based on defiance of magistrate judge's discovery orders); *Hindmon v. Nat'l-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 621 (7th Cir. 1982) (affirming dismissal as discovery sanction under Rule 37 where "Plaintiff's course of conduct in this case clearly demonstrates a willful failure to comply with court-ordered discovery," and rejecting plaintiff's "attempt to characterize his infractions as technical and non-prejudicial"); *Jimenez*,

11

321 F.3d at 657 (affirming dismissal sanction based on willful and flagrant Rule 11 violation). Plaintiffs' case is dismissed with prejudice.[5]

If plaintiffs wish to appeal this order of dismissal, they must file a notice of appeal with the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court of the United States District Court, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604. *See* Fed. R. App. P. 4(a)(1)(A); *Yapan v. Marvin Holding Co.*, 2014 WL 242839, at *3 (N.D. Ill. Jan. 22, 2014). Any notice of appeal must be filed within 30 days after the entry of judgment on November 7, 2018. *See* Fed. R. App. P. 4(a)(1)(A).

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: November 7, 2018

---

[5] The Court takes no personal offense at the comments made by plaintiffs about the Court, and those comments certainly do not form the basis for dismissal. It is natural for a party to become emotionally invested in its case, and sometimes emotions can get the better of a party. The Court raises the examples of the language used by plaintiffs in this opinion merely to highlight plaintiffs' repeated inability to focus their energies on discovery and the merits.